# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

**LEONARD TSOSIE,**

       **Plaintiff,**

**v.**                               **No. CIV 02-1575 LFG/LAM**

**CLIFF WASHBURN, an officer**
**of the Farmington Police Department,**
**in his individual capacity,**

       **Defendant.**

## MEMORANDUM OPINION AND ORDER

### Introduction

THIS MATTER is before the Court on Plaintiff Leonard Tsosie's ("Mr. Tsosie's" or "Plaintiff's") request to accept his late response to the summary judgment motion as timely (doc. no. 30), filed November 24, 2003, and Defendant Cliff Washburn's ("Lieutenant Washburn's" or "Defendant's") Motion for Summary Judgment for Qualified Immunity (doc. no. 26), filed October 17, 2003. Both motions are fully briefed, although Plaintiff Mr. Tsosie did not file a reply in support of his request to file an untimely response. [Doc. Nos. 30, 31, 33, 34.] After careful consideration of the pleadings, attachments and pertinent law, the Court grants Mr. Tsosie's request to file an untimely response to Lieutenant Washburn's Motion for Summary Judgment and denies Defendant's Motion for Summary Judgment. The Court's reasoning is set out below.

1

## Background

The following facts appear to be undisputed.[1]  On May 1, 2000, near midnight, Mr. Tsosie was standing outside on the property of a Church's Fried Chicken in Farmington, New Mexico. Lieutenant Washburn was on patrol and observed Mr. Tsosie.  According to Lieutenant Washburn, Plaintiff appeared to be hiding from view behind an electrical box.  Lieutenant Washburn pulled his police vehicle into the Church's Chicken property,  turned his spotlight on Mr. Tsosie, and identified himself as a Farmington police officer.  [Doc. No.  26, Fact Nos. 1-2.]

There is no evidence to show that Mr. Tsosie was armed or in the act of committing a crime.[2] [Answer, ¶ 7.]  It was later discovered that Mr. Tsosie's blood alcohol level was .436.  [Doc. No. 26, Fact No. 10.]   In addition, later discovered evidence indicated that Mr. Tsosie may have been drinking a beer on the Church Fried Chicken property and may have urinated on the property.  [Id.]

After Lieutenant Washburn identified himself to Mr. Tsosie, Mr. Tsosie began to run and Lieutenant Washburn gave chase on foot.  As he began to pursue Mr. Tsosie, Defendant pulled out his police baton and held it in his right hand.  He gained ground on Mr. Tsosie and just as he was about to overtake him, Mr. Tsosie stopped, turned around and faced Lieutenant Washburn with his

---

[1]Plaintiff's response improperly attempts to raise a genuine issue of material fact as to some of the facts set forth in Defendant's Motion for Summary Judgment.  For example, with respect to Defendant's undisputed material facts 1-4, and 8-9, Plaintiff argues, without more, that "there exists a genuine issue of material fact." (Doc. No. 31, p. 2.]  Plaintiff neither specifies which portions of these allegations he disputes nor does he identify what portions of the record support a dispute.  Plaintiff's bare assertions that material facts are in dispute are insufficient.  D.N.M.LR-Civ 56.1(b).

[2]Public intoxication is not a crime.  NMSA 1978 § 43-2-3.  However under New Mexico's Alcoholics and Intoxicated Persons Act, NMSA 1978 § 43-2-2 - 43-2-15, peace officers may take an intoxicated individual into protective custody and transport the individual to a health care facility, detoxification center, or, under certain circumstances, to a jail.  § 43-2-18.  Although Lieutenant Washburn does not argue that Mr. Tsosie was committing a crime (or even that he appeared intoxicated when he approached him), Mr. Tsosie may well have been in violation of various ordinances, including possession and/or consumption of alcoholic beverages in a public or private parking lot or driveway.  *See* § 5-1-5, Farmington Municipal Ordinances, or loitering.  *See* § 18-4-4, Farmington Municipal Ordinances.

fists clenched and raised in a fighting stance.  Lieutenant Washburn contends that his momentum was carrying him forward into Mr. Tsosie and that the Lieutenant raised his baton with both hands at that point.  [Doc. No. 26, Fact Nos. 3-4.]

Lieutenant Washburn next asserts that he struck Mr. Tsosie in the chest with the raised baton, knocking him to the ground, at which point Mr. Tsosie struck and injured his head on the asphalt.  [Doc. No. 26, Fact No. 4.]  Mr. Tsosie argues, through counsel, that Lieutenant Washburn hit Mr. Tsosie in the head with the baton, rather than the chest, knocking him to the ground and causing his head injuries.  [Amended Complaint, at ¶ 9; Plaintiff's Response at p. 4.]  Because of Mr. Tsosie's head injuries, he is unable, according to his attorney, to provide an affidavit to refute Lieutenant Washburn's version of the events.

It is undisputed that after Mr. Tsosie fell to the pavement, Lieutenant Washburn turned him over onto his stomach and handcuffed his hands behind his back.  [Doc. No. 26, Fact No. 6.]  The officer returned Mr. Tsosie to his back and observed that Mr. Tsosie was unconscious.  Mr. Tsosie was transported to the hospital, where he underwent several surgeries on his head.  [Doc. No. 26, Fact Nos. 6-7.]

A police incident review board memo, that cleared Lieutenant Washburn of any wrongdoing, notes that when Mr. Tsosie was knocked to the ground on his back, he struck the back of his head on the pavement.  [Doc. No. 26, Ex. 3, p. 1.]  According to the May 2, 2000 San Juan Regional Medical Center surgery note, attached by Defendant to his motion, a CT scan of Mr. Tsosie's head revealed "a 1.5-cm thick left frontal parietal temporal subdural hemorrhage with minimal shift."  [Doc. No. 26, Ex. 1] (emphasis added).  A subsequent medical record supplied by Plaintiff indicated that Mr. Tsosie presented with a "left frontal parietal subdural hemorrhage" that required a second

surgery the following morning.  [Doc. No. 31, Ex. 1.]  The CT head scan, supplied by Plaintiff, revealed a "left frontal craniotomy with adjacent extracranial left frontal and left temporal soft tissue swelling." [Doc. No. 31, Ex. 1, CT of head, p. 1.] Later hospital records, attached by Plaintiff to his response, showed that Mr. Tsosie suffered a "left temporal fracture." [Doc. No. 31, Ex. 1.]  About ten days after the incident, Mr. Tsosie was starting to use a few words.  On May 16, he was alert but disoriented, and on May 19, sent to rehabilitation.  [Doc. No. 31, Ex. 1, p. 2.]

On January 16, 2003, Mr. Tsosie filed an Amended Complaint to Recover Damages for Deprivation of Civil Rights, alleging that Lieutenant Washburn used excessive force in striking him on the head with a baton, and that he suffered a severe and permanent brain injury as a result of this blow.  [Doc. No. 2 at  ¶¶ 9, 10, 16.]  On October 17, 2003, Lieutenant Washburn moved for summary judgment based on the defense of qualified immunity, claiming that he acted with reasonable force and violated no clearly established law.

## Legal Standards

### I.   UNTIMELY RESPONSE TO MOTION FOR SUMMARY JUDGMENT

Plaintiff filed his response to the Motion for Summary Judgment 21 days late, after Defendant notified the Court that briefing on his motion was complete.  [Doc. No. 29.]  Plaintiff argued in his belated response that he was unable to obtain affidavits to support his response, because of Mr. Tsosie's inability to testify in this matter due to his brain injury and/or because of Plaintiff's counsel's unsuccessful efforts to obtain an affidavit from Mr. Tsosie's treating physician who had moved away. [Doc. 31, p. 4.]  According to Mr. Tsosie's counsel, a physician partner of the treating doctor who read the test results and medical records, told counsel that Mr. Tsosie's injuries were consistent with

being struck in the head with an object like a baton rather than resulting from a fall to the ground. Notwithstanding argument by counsel, no admissible testimony to this effect was provided.

The Court is far from convinced that Mr. Tsosie's counsel had a legitimate excuse for failing to respond in a timely manner to the Motion for Summary Judgment and counsel is strongly cautioned to abide by all court deadlines and rules in the future. However, under its discretion and the specific circumstances of this case, the Court elects to allow the filing of the late response. The 21-day delay does not prejudice Defendant, particularly when the Tenth Circuit has clarified that summary judgment in favor of a defendant cannot be granted merely because a party fails to file response to a summary judgment motion. Reed v. Bennett, 312 F.3d 1190, 1194-95 (10th Cir. 2002). In cases where a party neglects to file any response to such a motion, the Court must make the specific determinations required by Rule 56, based on the submissions of the moving party. Id. Here, even if the Court were to strike Mr. Tsosie's late response, the Court still would deny the motion for summary judgment for the reasons discussed below.

## II.   <u>QUALIFIED IMMUNITY</u>

Government officials are entitled to qualified immunity from suit in actions brought under § 1983 when their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Hatheway v. Thies, 335 F.3d 1199, 1204 (10th Cir. 2003). Qualified immunity, if granted, entitles an officer "not to stand trial or face the other burdens of litigation." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). The qualified immunity determination should be made at the earliest stage possible in the litigation. Saucier v. Katz, 533 U.S. 194, 200-01 (2001).

5

"In a suit against an officer for an alleged violation of a constitutional right, the requisites of a qualified immunity defense must be considered in proper sequence." Id. at 200.

> The initial inquiry is: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" If it is determined that "no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." However, if a violation is made out, "the next, sequential step is to ask whether the right was clearly established. This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition . . . ." Thus, "[t]he relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."

Lucero v. City of Albuquerque, 77 Fed. Appx 470, 2003 WL 22301239 at *4 (10th Cir. Oct. 8, 2003) (citing Saucier).

After a defendant asserts the qualified immunity defense, the burden shifts to the plaintiff to establish both inquiries as set out above. If a plaintiff fails to satisfy either part of the two-part inquiry, the court must grant qualified immunity to the moving defendant. Smith v. Cochran, 339 F.3d 1205, 1211 (10th Cir. 2003). But, if the plaintiff makes the twofold showing, the defendant bears the burden to show "that there are no genuine issues of material fact to preclude his entitlement to summary judgment as a matter of law. Hatheway, 335 F.3d at 1205. "When the record shows an unresolved dispute of historical fact relevant to this immunity analysis, a motion for summary judgment based on qualified immunity should be 'properly denied.'" Unzueta v. Steele, __ F. Supp. 2d ___, 2003 WL 22724633 at *2 (D. Kan. Oct. 29, 2003) (citing Salmon v. Schwarz, 948 F.2d 1131, 1136 (10th Cir. 1991)).

**Discussion**

**A.**     **_Whether Plaintiff Alleged a Violation of a Constitutional Right_**

The United States Supreme Court decision in Graham v. Connor, 490 U.S. 386 (1989) "clearly establishes the general proposition that use of force is contrary to the Fourth Amendment if it is excessive under objective standards of reasonableness." Saucier, 533 U.S. at 201-02.  The Court views the allegations in the light most favorable to Mr. Tsosie, i.e., that Lieutenant Washburn struck Mr. Tsosie in the head with his baton resulting in head injuries to Plaintiff.  The Court finds that such allegations, if proven, show an excessive use of force.  Thus, Plaintiff has satisfied the first prong of the qualified immunity inquiry.

**B.**     **_Whether the Constitutional Right was Clearly Established_**

The law is clearly established that an officer's actions must be objectively reasonable in light of the facts and circumstances that he faces.  Graham, 490 U.S. at 397; Medina v. Cram, 252 F.3d 1124, 1131 (10th Cir. 2001).  "The contours of the constitutional right must be sufficiently clear that a reasonable officer would understand that what he is doing violates the right." Saucier, 533 U.S. at 202.  The Saucier Court further clarified that the qualified immunity inquiry, while perhaps bearing some similarity to the Fourth Amendment reasonableness inquiry, has a further dimension.  Id. at 205.

> The concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct.  It is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts.  An officer might correctly perceive all of the relevant facts but have a mistaken understanding as to whether a particular amount of force is legal in those circumstances.  If the officer's mistake as to what the law requires is reasonable, however, the officer is entitled to the immunity defense.

7

Id. at 205 (emphasis added).

Part of this inquiry is typically comprised of a number of fact specific determinations, e.g., the severity of the crime at issue, whether the suspect presents an immediate threat to the officer or others, and whether the subject is evading or resisting arrest. Graham, 490 U.S. at 396. The inquiry also requires the determination of whether the officer might have made a mistake as to the amount of force he could legally employ.

Here, the pertinent circumstances are that Lieutenant Washburn did not observe Mr. Tsosie committing a crime, Plaintiff did not appear to pose any type of threat or serious danger to anyone, and Mr. Tsosie was not carrying any weapon. Further, there is no evidence presented that Lieutenant Washburn believed Plaintiff carried a weapon of any type or that he had committed a crime when the officer stopped and identified himself. In contrast, it is undisputed that Mr. Tsosie ran away from the officer and that he turned to face the officer with his hands held in a fighting stance. However, these factors alone, e.g., that Mr. Tsosie fled from Lieutenant Washburn and raised his fists toward the officer, do not compel a finding of summary judgment in favor of Defendant.

Lieutenant Washburn's use of his police baton to place some space between him and Mr. Tsosie might have been an acceptable amount of force to use under the circumstances. This is so because the use of force must be judged from the perspective or a reasonable officer on the scene who is "often forced to make split second judgments . . . about the amount of force that is necessary in a particular situation." Graham, 490 U.S. at 396-97. That analysis is based on the officer's perspective at the time of the incident rather than with the clarity of 20-20 hindsight. If an officer's actions are objectively reasonable as a matter of law, summary judgment, based on qualified immunity should be granted. Id. at 397.

In the present case, however, there are material disputes in the facts as to what amount of force actually was used, which present a question for the jury.  In addition, if the officer struck Mr. Tsosie across the forehead causing the fall and/or injuries, a jury question may exist as to whether such force was objectively reasonable and/or whether Defendant utilized a lawful amount of force under the circumstances.  *See* Davis v. Hill, 173 F. Supp. 2d 1136, 1145 (D. Kan. 2001) (summary judgment on qualified immunity denied where material fact was in dispute); Brandenburg v. Cureton, 882 F.2d 211, 215 (6th Cir. 1989) (court may not be able to reach the legal determination of qualified immunity where the exact character of the actions is unknown or in dispute).

Similarly, the Court is unable to decide as a matter of law, based on this set of facts, whether Lieutenant Washburn might have made a reasonable legal mistake as to the appropriateness of force he used since it is unclear what amount of force actually was used.  The dispute as to whether Lieutenant Washburn struck Plaintiff in the head or chest is not raised by affidavit or admissible testimony by Plaintiff, but instead by Lieutenant Washburn's own submissions, including the medical report that Plaintiff presented at the emergency room with a frontal head injury and the conflicting police report stating that Plaintiff hit the back of his head on the asphalt when he fell.

The Court recognizes that the qualified immunity question is not merely duplicative of the Fourth Amendment reasonableness inquiry.  Saucier, 533 U.S. at 203.  However, the present  legal determination before the Court cannot be answered without resolution of the underlying critical factual dispute.  Thus, this matter is best left for the fact finder, unless the factual disputes of how much force was used are resolved during the course of this litigation, at which time Defendant is again free to raise the defense of qualified immunity.

**<u>Conclusion</u>**

For all of the above-stated reasons, the Court concludes that Plaintiff's request to file an untimely response to the Motion for Summary Judgment should be granted and that Defendant's Motion for Summary Judgment based on Qualified Immunity should be denied.

IT IS THEREFORE ORDERED that (1) Plaintiff's request to file an untimely response to the Motion for Summary Judgment (doc. no. 30) is GRANTED and (2) Defendant Cliff Washburn's Motion for Summary Judgment for Qualified Immunity (doc. no. 26) is DENIED.

_____
Lorenzo F. Garcia
Chief United States Magistrate Judge